850 F.2d 688
 128 L.R.R.M. (BNA) 2952
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL-CIO,
CLC, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
United Merchants and Manufacturers, Inc., Intervenor.
 No. 87-2649.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 3, 1988.
Decided: June 15, 1988.
 
 Arthur M. Goldberg and David M. Prouty, Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, for petitioner.
 W. Christian Schumann and Gordon B. Scott, National Labor Relations Board, for respondent.
 
 
 1
 David C. Hagaman, Clark, Paul, Hoover & Mallard, for intervenor.
 
 
 2
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, and NORMAN P. RAMSEY, United States District Judge for the District of Maryland, sitting by designation.
 
 
 3
 NORMAN P. RAMSEY, District Judge, sitting by designation.
 
 
 4
 The Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC (Union) has petitioned for review of an order of the National Labor Relations Board (NLRB) against Conway Mill, a subsidiary of United Merchants and Manufacturers, Inc. (Company), which has intervened to support the decision of the Board. Because the Board's finding that the Company did not violate section 8(a)(3) and (1) of the National Labor Relations Act by discharging its employee Diane Dunlap is not supported by substantial evidence in the record as a whole, we reverse the Board's decision.
 
 
 5
 Conway Mill is a textile plant that manufactures synthetic yarn. During the period of concern here, it employed about 260 employees in four departments. The Union began an organizing drive at the plant in June of 1983. The campaign continued through the fall of 1983 but no petition for an election was ever filed because the Union felt the coercive atmosphere created by the Company made it unlikely that any election would be free and fair.
 
 
 6
 After trial, an Administrative Law Judge found numerous unfair labor practices during this period that violated the Act. Upon review of the findings of the ALJ, the Board found the following six actions by the Company to be violations:
 
 
 7
 1. Soliciting its employees to report on the union activity among employees and to recall their signed union cards.
 
 
 8
 2. Threatening employees because they have engaged in union activity.
 
 
 9
 3. Interrogating employees about their union activities and the union activities of other employees.
 
 
 10
 4. Giving employees the impression that their union activities were under surveillance.
 
 
 11
 5. Restricting employee movements about the mill because of their union activity.
 
 
 12
 6. Issuing disciplinary reprimands to employees Susan Sarris and Thurman White as a reprisal for their having engaged in activities on behalf of the Union.
 
 
 13
 The Board, however, reversed the ALJ on two actions by finding that the Company did not violate the Act by:
 
 
 14
 1) Informing its employees that if they selected the Union as their collective bargaining representative they would no longer have direct access to management; and
 
 
 15
 2) Issuing a reprimand to, and then discharging, employee Diane Dunlap because of her union activities.
 
 
 16
 The Union has appealed the Board's finding in the matter of Diane Dunlap's discharge, and it is only that portion of the Board's findings which is under review here.
 
 
 17
 The scope of our review in a case of this type is limited. If we find that the findings of the Board have substantial support in the record as a whole, we must end our inquiry at that point even though we might have reached a different result had we heard the evidence in the first instance. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Our review will start with the proof requirements for unlawful discharge applicable to the factual record in the case.
 
 
 18
 The Board established its current proof requirements for determining whether an employee has violated the Act by discharging a union adherent in Wright Line, 251 NLRB 1083 (1980), enforced 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). See also, NLRB v. Transportation Management Corp., 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving Board's Wright Line formulation). Under this view, the Board's general counsel bears the initial burden of persuasion to establish unlawful discharge. As this Court formulated it:
 
 
 19
 He must demonstrate by preponderant evidence (1) that the employee was engaged in protected activity; (2) that the employer was aware of the activity; and (3) that the activity or the worker's union affiliations was a substantial or motivating reason for the employer's action. Once it proves these three elements, the general counsel has established a prima facie case of unlawful discharge.
 
 
 20
 N.L.R.B. v. Daniel Const. Co., 731 F.2d 191, 197 (4th Cir.1984). Once the prima facie case is made, the employer can escape liability by affirmatively proving that the firing would have occurred regardless of the employee's union sympathies, that is, that there were independent lawful grounds for the action. Id. Such independent grounds can include the worker's deficiencies in her performance of her duties or the imperatives of an economic crisis. Id.
 
 
 21
 The prima facie case for unlawful discharge is evident in the facts of this case. Diane Dunlap's active support of the Union is apparent. She drove the Union's representative to fellow employees' homes and spoke to them about the Union, making between 35 and 40 such calls. She read and distributed Union literature in the company cafeteria. She advocated the Union at employee group meetings where all supervisors were in attendance. That the Company knew of her sympathies is evident, for its personnel director told her that the only way she could prove her loyalty to the Company was to revoke her union authorization card.
 
 
 22
 The Company's animus toward the Union is equally apparent. The numerous section 8(a)(1) violations during the same period hamper the Company in its defense against the unlawful motivation in firing charge. Indeed, the "violations provide independent evidence of [the Company's] considerable and persistent hostility towards its employees' unionization efforts." See N.L.R.B. v. Daniel Const. Co., 731 F.2d at 197. As noted above, these violations included impermissible solicitations, threats, interrogations, and restrictions, as well as disciplinary reprimands issued to employees for having engaged in union activities.
 
 
 23
 The Company has an established discipline policy which follows a progression of steps. It classifies infractions into three types: attendance, job performance and conduct. A first offense results in an oral warning, which may be accompanied by a written "talk sheet." A second offense in the same area within any twelve-month period is cause for a written reprimand. Any employee who accumulates three written reprimands within a twelve-month period is automatically discharged. In deciding whether or not to give written reprimands, however, supervisors exercise great discretion.
 
 
 24
 Diane Dunlap's discharge was ostensibly due to job conduct, based on three written reprimands in twelve months. On August 1, 1983, Dunlap received a written reprimand for unexcused absence. On September 8, she received a talk sheet for stacking work.[1] She received a second written reprimand on October 3 for tardiness. And on October 12 she received her third written reprimand, again for stacking work. The crucial event, for purposes of our review, is the issuance of the third written reprimand, which the company contends was for deficient job performance, and which mandated Diane Dunlap's automatic discharge.
 
 
 25
 In firing Dunlap, the Company followed all the formalities required by its disciplinary system. However, mere procedural regularity cannot suffice to satisfy the Company's burden of showing by a preponderance of the evidence that it had a lawful basis for the discharge. There must be a substantive basis shown for the firing in order for the Company to meet its burden of showing that the reason alleged for the discharge is not a pretext for terminating union sympathizers.
 
 
 26
 That substantive basis is lacking in this case. The record is bereft of any evidence that the job performance complained of was of such concern to the Company that it vigorously enforced it through its disciplinary actions. While the record contains an extensive list of discipline actions taken by the Company, the only talk sheets issued for stacking work were given to Diane Dunlap and to one of her co-workers, with both being issued the same day. And the only written reprimand of record given for stacking work was given to Dunlap. Moreover, Dunlap herself had several years experience in that position without performance ever being noted as deficient. Thus, while the Company's procedure for creeling was in writing, the record shows no effort on the part of the Company to enforce it except against Dunlap.
 
 
 27
 It is true that this Court has rejected the view that "misconduct once tolerated at all must be tolerated forever." NLRB v. Eldorado Mfg. Co., 660 F.2d 1207, 1214 (7th Cir.1981), cited with approval in Washington Materials, Inc. v. NLRB, 803 F.2d 1333, 1340 (4th Cir.1986). A company needs the ability to change what it chooses to enforce or not to enforce among its policies, for "there must be room in the law for a right of an employer somewhere, sometime, at some stage, to free itself of continuing [and] unproductive [misconduct]." NLRB v. Eldorado Mfg. Co., 660 F.2d at 1214, cited with approval in Washington Materials, Inc. v. NLRB, 803 F.2d at 1340-41. However, the evidence must show that a change of policy has in fact been implemented, and not that a dormant policy has been cited as a pretext for firing a union sympathizer. Where, as here, the record shows that the policy has never been enforced except against a known union supporter, and this during a period of strong hostility against the Union, the Company has not met its burden of showing that there was a lawful basis to the firing. Diane Dunlap is entitled to appropriate relief under the Act.
 
 
 28
 Finally, the Board contends that the claim of the Union is not properly before this Court for review. The Board alleges, citing section 10(e) of the Act (29 U.S.C. Sec. 160(e)),[2] that the proper review the Union should have sought was by means of a motion for reconsideration by the Board. However, the record discloses that all issues the Union raises here were also before the Board when it considered the matter, so there is no merit in the Board's position.
 
 
 29
 For the foregoing reasons, the Decision and Order of the Board is
 
 
 30
 REVERSED.
 
 
 
 [1]
 At the time, Dunlap worked as an open-end spinner. One of her duties was creeling, or stocking spinning frames with silver which is spun into yarn. The basic spinning frame has four sections, each of which holds fifty cans of sliver. The established creeling procedure is that the operator, once five cans have run out of sliver, removes all fifty cans and replaces them with full cans. Stacking is a form of early creeling in which the operator places partially empty cans of sliver on top of full cans and ties the sliver in the two cans together
 
 
 [2]
 In relevant part, the statute reads "No objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. Sec. 160(e)